UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| MARK ALLEN GROVER, SR., #319483, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07-cv-641 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| RUO CARIUTY, et al., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| _____) | |

       This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is currently an inmate at the Hiawatha Correctional Facility (HTF). (docket # 49). Plaintiff's complaint relates to events that allegedly occurred on February 8 and March 4, 2006 at the Lakeland Correctional Facility (LCF). Plaintiff named Resident Unit Officer (RUO) Kamal Cariuty and RUO James Knaack as defendants. A third defendant, Assistant Deputy Warden (ADW) Charles Paradine has retired from the Michigan Department of Corrections (MDOC), and has never been served with process.

       Plaintiff alleges that on February 8, 2006, defendant Knaack "harassed and intimidated [him] in an attempt to dissuade [plaintiff] from following through on grievances and other formal complaints [plaintiff] made against RUO Cariuty." (Compl., Count 5). Plaintiff alleges that on March 4, 2006, defendant Cariuty violated his First and Eighth Amendment rights by placing a padlock into plaintiff's hand with enough force to result in a small bruise on one of

plaintiff's fingers. (Compl., Counts 1 and 2).[1]  Plaintiff seeks an award of monetary damages against defendants in their individual and official capacities.  (*Id.*, ¶ V).

The matter is now before me on a motion for summary judgment by defendants Knaack and Cariuty.  (docket # 22).  Plaintiff has filed a brief in opposition to defendants' motion.  (docket # 33).  For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted.  I further recommend that plaintiff's claims for damages against defendant Paradine in his official capacity be dismissed with prejudice because they are barred by Eleventh Amendment immunity, and that all plaintiff's remaining claims against defendant Paradine be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

---

[1]Counts 3 and 4 of plaintiff's complaint are claims against ADW Paradine.

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).

**<u>Proposed Findings of Fact</u>**

The following facts are beyond genuine issue. Plaintiff was an inmate at LCF in early 2006, and he had been housed in the same LCF housing unit for almost two years. (Plf. Aff. ¶¶ 1, 4, docket # 1). Plaintiff's prison job at LCF was working as a bricklayer. (Cariuty Aff. ¶ 3, docket # 23, Ex. 1; Plf. Aff. ¶ 1). Plaintiff disapproved of how "RUO Cariuty who had recently been transferred to the unit" was running it. (Plf. Aff. ¶ 4). On January 17, 2006, plaintiff made a written

complaint to Warden Carol Howes stating that RUO Cariuty (1) was rude and vulgar; (2) was "corrupt" because he was allegedly gambling on the job; (3) let his union job get in the way of his unit job; and (4) spent too much time on his bathroom breaks. (Plf. Aff. ¶ 4). Specifically, plaintiff complained that on or about December 31, 2005, RUO Cariuty talked with someone on the telephone about football and improperly used a "population wastebasket" to throw away a piece of paper. Plaintiff retrieved this paper from the wastebasket and discovered that it listed the twelve National Football League teams that had made the 2005-2006 playoffs. Plaintiff characterized this piece of paper as a "betting slip" or gambling sheet." (docket # 1, attachment; Plf. Aff. ¶ 5). Plaintiff complained that RUO Cariuty was a "Union representative and a stickler for the rules for prisoners." Plaintiff stated that RUO Cariuty "intimidates people by cussing and yelling at them." According to plaintiff, Officer Cariuty spent "anywhere from 29 to 36 minutes" on his bathroom breaks. (docket # 1, attachments; Plf. Aff. ¶ 4). On January 21, 2006, plaintiff sent Warden Howes a letter inquiring whether she had received his complaint and questioned whether the "RUM for Unit 4" could conduct an adequate investigation. On January 24, 2006, the Warden Howes provided plaintiff with this response: "Your allegations against RUO Cariuty were investigated and could not be substantiated." (docket # 1, attachment; Plf. Aff. ¶¶ 12, 13; docket # 33, Ex. 6). Defendant Cariuty was not aware of plaintiff's complaints to the warden regarding Cariuty's operation of the housing unit until he was served with process in this lawsuit in October of 2007. (Cariuty Aff. ¶ 11).

Plaintiff states that on January 28, 2006, his supervisor in the prison's maintenance department made a request at the prison's control center that "prisoner[] workers be allowed to go to early dinner." (Plf. Aff. ¶ 15). Prisoner movement at LCF is controlled through the prisoner movement/itinerary system. Any prisoner movement outside that system must be authorized by the

control center. If a supervisor needs a prisoner to report to a work assignment, the supervisor must contact the control center and request such movement. If the request is approved, the control center contacts the housing unit and advises the officer on duty where to send the prisoner. (Cariuty Aff. ¶ 5). On January 28, 2006, defendant Cariuty did not allow plaintiff to attend an early meal. (Plf. Aff. ¶ 15). Defendant Cariuty had not received authorization from control center to allow this movement. As a resident unit officer, Cariuty "lacked authority to send any prisoner to a work assignment without that prisoner's movement being on the prisoner's itinerary or being authorized by the control center." (Cariuty Aff. ¶ 5). On January 28, 2006, plaintiff filed grievance number LCF-2006-01-0075-17I against Cariuty. (docket # 33, Ex. 7). Plaintiff claimed that Officer Cariuty's action was retaliatory and violated "Work Rule 10" of the departmental work rules. (*Id.*).

On February 8, 2006, the maintenance supervisor and RUM Forester agreed that the supervisor would contact RUM Forrester regarding future call-outs. (Plf. Aff. ¶¶ 16-18). Forrester advised plaintiff that there was nothing in the control center log indicating that plaintiff had been called out for an early meal on January 28, 2006. Plaintiff "signed off" on grievance number LCF-2006-01-0075-17I, agreeing that his grievance had been resolved. (Plf. Aff. ¶¶ 17-21; docket # 33, Ex. 7). Plaintiff states that he agreed to sign off on his grievance against Cariuty on the basis of the agreement that his supervisor would contact RUM Forrester and the absence of documentation in the control center's log book supporting his claim. (Plf. Aff. ¶¶ 16-18, 21).

On February 8, 2006, at approximately 7:00 p.m., plaintiff was allegedly approached by RUO Knaack, and according to plaintiff, they had a conversation.[2] (Plf. Aff. ¶ 22). Plaintiff

---

[2]Defendant Knaack's affidavit states that plaintiff made several attempts to engage Knaack in conversations about prison staff members, but Knaack declined. (Knaack Aff. ¶¶ 4-6).

states that he and Knaack discussed the grievance against Cariuty that had been resolved earlier that day, the absence of evidence supporting plaintiff's claim that he had been called out for work, plaintiff's problems documenting his claim that the paper he had retrieved from a wastebasket had been a "gambling slip," whether plaintiff's boss in the prison's maintenance department was likely to be fired for his "over-familiarity" with plaintiff or whether plaintiff could be transferred to another prison on that basis, the possibility that RUO Cariuty might complain to MDOC officials that plaintiff was attempting to have him fired by filing unsupported grievances, and how plaintiff had not experienced problems in this LCF housing unit until RUO Cariuty took over. (Plf. Aff. ¶ 23). Plaintiff states that Knaack initiated the February 8, 2006 conversation "for the purpose of intimidating me and to try to persuade me to drop, or not to pursue any further, my complaint against his friend and co-worker, [O]fficer Cariuty." (Plf. Aff. ¶ 24). There is no evidence that plaintiff filed a grievance against defendant Knaack regarding their purported February 8, 2006 conversation.

On March 4, 2006, Officer Cariuty approached plaintiff and advised plaintiff that he would need to perform a "mock pack-up." (Plf. Aff. ¶ 28; Cariuty Aff. ¶ 8 and Ex. 3). A "mock pack-up" is a procedure the MDOC uses to control the volume of personal property prisoners have in their possession. Prisoners are not allowed to possess personal property in excess of that which will fit inside the standard State-provided duffle bag and foot-locker. Conducting these pack-ups is a regular part of RUO Cariuty's duties. (Cariuty Aff. ¶ 6). Plaintiff objected to this pack-up, claiming that he had recently had one. Defendant Cariuty responded that a recent pack-up would not excuse plaintiff from complying. Plaintiff eventually packed up his property. (Plf. Aff. ¶¶ 29-30). After plaintiff had finished packing, he went to the officer's station and informed defendant Cariuty that his property was packed and ready for inspection. During Officer Cariuty's inspection, he

unlocked plaintiff's footlocker and held the padlock in his hand. Officer Cariuty ordered plaintiff to remove the tray from his footlocker. (Plf. Aff. ¶ 31). According to prisoner Ormsbee, a witness, plaintiff made persistent, but unsuccessful efforts to convince Officer Cariuty to remove the tray from the footlocker himself. Plaintiff eventually followed Officer Cariuty's order and removed the tray. (Ormsbee Aff., ¶ 2, docket # 33, Ex. 4). While Officer Cariuty was attempting to complete his inspection, plaintiff was talking incessantly. This was contrary to RUO Cariuty's orders to plaintiff to "zip it" and "just let me do my job and shut up." (Ormsbee Aff. ¶ 2). After Cariuty told plaintiff to shut up, plaintiff responded by vehemently arguing that Cariuty had no right to tell him to shut up and that plaintiff considered Cariuty's statement to be threatening behavior. Plaintiff insisted on seeing the shift commander immediately. (Plf. Aff. ¶ 32; Cariuty Aff. ¶ 9). Cariuty stood up and plaintiff put out his hand for the return of his padlock. (Ormsbee Aff. ¶ 2). Defendant Cariuty handed the padlock back to plaintiff. (Cariuty Aff. ¶ 10). Prisoner Ormsbee states that Cariuty "slapped" the padlock into plaintiff's hand and went to the office. (Ormsbee Aff. ¶ 2). Plaintiff states that the padlock was "slammed" into his hand "hard enough that it hurt." (Plf. Aff. ¶ 33). Officer Cariuty contacted control center regarding plaintiff's disruptive actions. Cariuty was directed to send plaintiff to the control center. Plaintiff went to the control center without further incident. (Plf. Aff. ¶ 34-36; Cariuty Aff. ¶ 10; Ormsbee Aff. ¶ 2). Later in the day, plaintiff drafted a health care request complaining that he had swelling in a finger on his right hand. (docket # 33, Ex. 2). A March 8, 2006 medical examination revealed that plaintiff had a small bruise on the third finger of his right hand. Plaintiff had a full range of motion in his hand and wrist, and he stated that he did not feel that he had "any effects from the incident." (*Id.*, Ex. 3).

   Plaintiff filed this lawsuit on July 6, 2007.

**Discussion**

1.     **Eleventh Amendment Immunity**

Plaintiff's claims for monetary damages against defendants in their official capacities are barred by Eleventh Amendment immunity. Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002). A suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment generally[3] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against defendants in their official capacities.

---

[3] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974).

**2.     Eighth Amendment Claim**

Plaintiff alleges that defendant Cariuty violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when he "slammed" a padlock into plaintiff's open hand, resulting in a small bruise on one of plaintiff's fingers. (Compl., Count 1). As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. See *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

"'The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008)(quoting *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992)); *see Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008)(a "slap" to the detainee's neck that "hurt" was a *de minimis* use of force). Not every purportedly "malevolent" touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. Officer Cariuty's slapping of the padlock into plaintiff's hand, allegedly causing a small bruise on one of plaintiff's fingers, constituted a *de minimis* use of force. Although this minimal physical contact falls far short of a constitutional violation, it may be actionable as a state tort. Not every state tort committed by a state employee rises to the level of a constitutional cause of action. Defendant Cariuty is entitled to judgment in his favor as a matter of law on plaintiff's Eighth Amendment claim.

### 3. First Amendment Retaliation Claims

On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thadeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 (6th Cir. 2006). The plaintiff has the burden of proof on all three elements. *See, e.g., Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

#### A. Defendant Cariuty

Plaintiff alleges that Cariuty's slapping of the a padlock into his hand was in retaliation for plaintiff's verbal confrontation with Cariuty on that date as was an "attempt to silence" plaintiff. (Compl., Count 2). Plaintiff's verbal harassment of Officer Cariuty was not "protected conduct," and defendant Cariuty is entitled to judgment in his favor as a matter of law on this claim. As a state prisoner serving a criminal conviction, plaintiff retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Procunier*, 417 U.S. at 822); *see Turner v. Safley*, 482 U.S. 78 (1987). Lawful incarceration legitimately requires the retraction or withdrawal of many rights and privileges as a necessary consequence of society's need to deter and punish crime. *O'Lone v. Estate of Shabazz*, 482 U.S.

342, 348 (1987). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974); *see O'Lone*, 482 U.S. at 348.

The Sixth Circuit's recent decision in *Lockett v. Suardini*, 526 F.3d 866 (6th Cir. 2008) is instructive. The issue before the Court of Appeals in *Lockett* was whether a prisoner Lockett's calling a hearing officer a "foul and corrupted bitch" was "'protected conduct" under the first prong of the *Thaddeus-X* test. In *Thddeus-X*, the *en banc* Court of Appeals had held that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct' and cannot proceed beyond step one" of the three-step retaliation analysis. 175 F. 3d at 394; *Lockett*, 526 F.3d at 874. Prisoner Lockett had not been charged with or convicted of insolence for the disruptive and crude comment he made to the hearing officer, yet the Sixth Circuit had no difficulty finding that Lockett had been "insolent" in violation of the MDOC's policy directive. *Lockett*, 526 F.3d at 874 (citing P.D. 03.03.105B). "Lockett's comment that the hearing officer was 'a foul and corrupted bitch' was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding. It thus f[ell] well within the definition of 'insolence' under the MDOC Policy Directive." *Lockett*, 526 F.3d at 874. The Sixth Circuit held that Lockett's retaliation claim failed as a matter of law because his comment to the hearing officer had not been protected conduct. *Lockett*, 526 F.3d at 874. Plaintiff's conduct on March 4, 2006 was insolent and it constituted violation of Officer Cariuty's direct orders. Plaintiff had no constitutionally-protected right to badger RUO Cariuty after he had been ordered to "shut up," or to interfere with Officer Cariuty's completion of the inspection. *Id.; see Mayes v. Wolfenbarger*, No. 06-cv-14889, 2007 WL 1888794,

at * 4 (E.D. Mich. June 29, 2007); *see also Wilson v. Budgeon*, No. 3:05-2102, 2007 WL 464700, at * 6 (M.D. Pa. Feb. 13, 2007). Defendant Cariuty is entitled to judgment in his favor as a matter of law on this retaliation claim.

Plaintiff alleges that Cariuty's slapping of the padlock into his hand on March 4, 2006, was in "retaliation" for plaintiff's "complaints" about Cariuty, citing grievance number LCF-2006-03-0191-26A. (Compl., Count 2). A prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007). Grievance number LCF-2006-03-0191-26A cannot supply the necessary protected conduct, because it was not filed until March 15, 2006, *after* the alleged retaliatory act[4]. Plaintiff's grievance number LCF-2006-01-0075-17I against defendant Cariuty for failure to allow plaintiff to attend an early meal on January 28, 2006 had been resolved long before the March 4, 2006 incident. On January 24, 2006, Warden Howes had informed plaintiff that his allegations that RUO Cariuty was rude and vulgar, was gambling on the job, letting his union job get in the way of his unit job, and was spending too much time in the bathroom, had been investigated and could not be substantiated. For present purposes, I will assume that plaintiff's grievance number LCF-2006-01-0075-17I and his January 17, 2006 complaint to Warden Howes could be considered protected conduct. *See Lewis v. Randle*, 66 F. App'x 560, 562 (6th Cir. 2003).

The second component of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in that conduct. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. *See Bell v. Johnson*,

---

[4]Defendants' brief emphasizes that the only grievance plaintiff attached to his complaint was a grievance by prisoner Mark Tooley. (Def. Brief at 10, 11). Plaintiff cannot rely on another prisoner's protected conduct.

308 F.3d 594, 606 (6th Cir. 2002); *see also Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003). In *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005), the Sixth Circuit observed that, "As an initial matter, pursuant to this court's *en banc* decision in *Thaddeus-X*, we are required to 'tailor[ ]' our analysis under the 'adverse action' prong to the circumstances of this specific retaliation claim. *Id.* at 398 (requiring specific tailoring and noting that '[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse')." *Mezibov*, 411 F.3d at 721; *see Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006). The Sixth Circuit has cautioned that "§ 1983 is a tort statute, [and] we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov*, 411 F.3d at 721; *see also Talor v. City of Falmouth*. 187 F. App'x 596, 600 (6th Cir. 2006). A slap in the palm (even assuming that it and not plaintiff's work as a bricklayer was the cause of the small bruise observed on one of plaintiff's fingers) is not an action that would deter a person of ordinary firmness from engaging in protected conduct. No reasonable trier of fact could find in plaintiff's favor on the second element of this retaliation claim.

Finally, under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. The plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399; *see Skinner v. Bolden*, 89 F. App'x 579 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected

activity, the defendant is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399; *see Smith v. Campbell* 250 F.3d 1032, 1038 (6th Cir. 2001). No reasonable trier of fact confronted with this record could find in plaintiff's favor on the causation component, given the remote nature of plaintiff's protected conduct and the events immediately before and after RUO Cariuty's return of plaintiff's padlock.

      B.    <u>Defendant Knaack</u>

Plaintiff alleges that defendant Knaack met with him on February 8, 2006 in an attempt to "dissuade [plaintiff] from following through on grievances and other formal complaints [plaintiff] made against RUO Cariuty." (Compl., Count 5). Plaintiff's brief clarified that he is asserting a First Amendment retaliation claim against defendant Knaack. (Plaintiff's Brief at 14, docket # 33). Plaintiff states that this conversation was "for the purpose of intimidating me and to try to persuade me to drop, or not pursue any further, my complaint against his friend and co-worker, [O]fficer Cariuty." (Plf. Aff. ¶ 24). Plaintiff's grievance against RUO Cariuty had been resolved before this conversation is alleged to have occurred. Weeks earlier, Warden Howes had found that none of plaintiff's other criticisms of Cariuty's operation of the housing unit could be substantiated. On the this record, no reasonable trier of fact could find in plaintiff's favor on the second or third elements of plaintiff's First Amendment retaliation claim against defendant Knaack. In particular, no reasonable person could conclude that a mere conversation with a correction officer would deter a prisoner of ordinary firmness from pursuing future grievances. Retaliation claims cannot be based on such trivial events.

4.      **Defendant Paradine**

Plaintiff filed his complaint on July 6, 2007. The summons for defendant Paradine was returned unexecuted. (docket # 6). More than fifteen months have passed since plaintiff filed his complaint and defendant Paradine has never been served with process. I recommend that plaintiff's claims against defendant Paradine be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 4(m). This report and recommendation serves as plaintiff's notice of impending dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, No. 07-1521, 2008 WL 2491620, at *6 (6th Cir. June 23, 2008).

**Recommended Disposition**

For the foregoing reasons, I recommend that the motion for summary judgment by defendants Cariuty and Knaack (docket # 22) be granted. I further recommend that all plaintiff's claims for damages against defendant Paradine in his official capacity be dismissed with prejudice because they are barred by Eleventh Amendment immunity, and that all plaintiff's remaining claims against defendant Paradine be dismissed without prejudice for failure to achieve service.


Dated:   October 28, 2008           /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474

U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).